

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

**November 6, 1947**

Hon. Ernest O. Thompson, Chairman
Railroad Commission of Texas
Austin, Texas

Opinion No. V-426

Re: Construction of
H. B. 298, Chap.
257, Acts of 50th
Leg., Reg. Ses-
sion, 1947, as
applied to certain
interstate motor
vehicle carriers.

Dear Sir:

Your request for an opinion in connection
with H. B. 298, Chapter 257, Acts of the 50th Legisla-
ture, Regular Session, 1947, presents five separate
questions. For clarity we will restate the questions
separately and immediately following each restatement
we will give our answer.

"1. Does reciprocity (under H. B.
298) depend upon the state of registra-
tion of trucks operated by a foreign mo-
tor carrier where the trucks are regis-
tered in a state other than the domicile
of such foreign motor carrier, or does it
depend upon the state of domicile of the
foreign motor carrier? As an example, a
foreign motor carrier whose domicile is
in the State of Illinois operates trucks
into Texas which are registered in Louisi-
ana, Oklahoma, New York, and other states.
There is no reciprocity agreement between
Texas and Illinois at the present time and
there are reciprocal agreements between Tex-
as, Louisiana, Oklahoma, and other states.
The problem presented is whether or not the
said foreign motor carrier domiciled in Il-
linois is required to pay plate and tax fees
to the Railroad Commission on the trucks
that are registered in Louisiana, Oklahoma,

or other states which have reciprocal agree-
ments with Texas."

The 50th Legislature at its Regular Session
in 1947 enacted H. B. 298, Chapter 257, amending Chap-
ter 314, Acts of the 41st Legislature, Regular Session,
1929, as subsequently amended (Article 911b, V.C.S.),
by adding a new section to be known as Section 18a,
which reads as follows:

"18a. Reciprocity. Motor carriers of
property for hire residing or domiciled out-
side of the State of Texas, who have author-
ity from the Interstate Commerce Commission
to transport property for hire to, from or
between points in Texas, and whose operations
in this State are limited to the transporta-
tion of property for hire in interstate or
foreign commerce only under such authority,
shall not be required to pay the special fees
provided for in Sections 7, 17(a), 18 and sub-
paragraphs (g) and (h) of Section 5a(a) of
this Act; provided, however, this exemption
from the payment of said fees shall not apply
unless the States in which such foreign motor
carriers reside or are domiciled shall like-
wise extend to motor carriers residing or dom-
iciled in Texas exemption from the payment of
the same or similar fees or expenses in their
respective States; such exemptions from the
payment of such fees in Texas shall be effec-
tive when the governmental agency or the au-
thorized representative thereof of such for-
eign States having jurisdiction over the op-
erations of motor carriers for hire shall cer-
tify in writing to the Railroad Commission of
Texas that the exemption from the payment of
such fees and expenses by such Texas carriers
has been granted, and is in full force and
effect. Provided, further, however, that this
exemption shall not apply to the payment of
filing fees for applications for certificates
or permits to operate in this State.

"Nonresident motor carriers coming with-
in the exemptions herein provided for shall
not be required to display upon the vehicles
operated in this State under the provisions
of such exemption, identification plates is-
sued by the Railroad Commission of Texas, and

the Commission shall not be required to furnish such carriers with such plates." (Emphasis ours)

Under the terms and provisions of the above quoted section, the exemption granted to nonresident motor carriers by way of reciprocity from payment of Railroad Commission plate and tax fees is dependent upon four distinct things. They are: (1) The person must be a motor carrier; (2) The motor carrier must reside or be domiciled outside the State of Texas; (3) His motor carrier operations in Texas must be exclusively in interstate or foreign commerce pursuant to valid and legal authority issued by the Interstate Commerce Commission; and (4) The state in which the nonresident motor carrier resides or is domiciled must grant like exemptions in the payment of the same or similar fees to motor carriers residing or domiciled in Texas. Nothing is contained in said section which in any manner makes reciprocity dependent upon the place of registering the nonresident carriers motor vehicles.

It is to be observed that the important thing in two of the above requirements is the place of residing or domicile of the nonresident carrier. The section provides that the exemption applies to motor carriers "residing or domiciled outside of the State of Texas" and that said exemption shall not apply "unless the states in which such foreign motor carriers reside or are domiciled" shall extend like exemptions to "motor carriers residing or domiciled in Texas." It therefore becomes necessary to determine the meaning of the terms "reside," "residing," and "domicile."

The terms "reside" and "residing" are elastic, and are to be interpreted in the light of the object and purpose of the statute in which such terms are employed. McGrath v. Stevenson, 77 P. (2d) 608 (Wash. 1938).

The Attorney General has previously construed the term "residing" as used in our registration of motor vehicle statute (Article 6675a-2, V.C.S.) to mean "Legal resident." See Opinion O-1023, dated July 10, 1939, citing 54 Corpus Juris 708. Our courts have reached a similar result in connection with our venue statutes; Evans v. American Publishing Co., 13 S. W. (2d) 358 (Comm. App. 1929); Hennessey v. Campbell, 32

S. W. (2d) 390 (Tex. Civ. App. 1930); and have construed
the term "resides" as used in the statute providing for
the removal of a minor's disabilities to mean "legal
domicile." Gulf, C. & S. F. Ry. Co. v. Lemons, 109 Tex.
244, 206 S. W. 75 (1918).

Domicile is defined by the American Law Insti-
tute Restatement, Conflict of Law, § 9, to mean the place
with which a person has a settled connection for certain
legal purposes, either because his home is there, or be-
cause that place is assigned to him by law. It is also
stated in the Restatement on Conflict of Law, § 41, that
a corporation is domiciled in the state where it is in-
corporated, and cannot acquire a domicile outside that
state.

As applied to an individual, it has been held
that one's domicile is the place where one has his true,
fixed, permanent home and principal establishment, and
to which, whenever he is absent, he has the intention
of returning. 13 Words & Phrases 261; State v. DeCasi-
nova's Adm'x., 1 Tex. 401 (1846).

It is our opinion that the Legislature intend-
ed through its use of the terms "reside" and "residing"
to mean "legal residence," and as so used they are syn-
onymous with the term "domicile." 28 C. J. S. 7, § 2,
17 Am. Jur. 596, § 11; Am. Law Inst. Restatement, Con-
flict of Laws, § 9. Furthermore, by the very nature of
the Act, legal residence or domicile is not coexistent
in the same person in two or more states at the same
time. Michael v. Michael, 79 S. W. 74 (Tex. Civ. App.
1904).

In answer to your first question you are
therefore advised that reciprocity is dependent upon
whether or not there is in existence a reciprocal agree-
ment between Texas and the state of the legal residence
or domicile of the foreign motor carrier rather than
with the state where the vehicles of the foreign motor
carrier are registered.

> "2. If a foreign motor carrier has au-
> thority from the Interstate Commerce Commis-
> sion to transport property for hire to, from,
> and between Texas points only (no other state)
> and whose operations in this state are limit-
> ed exclusively to the transportation of prop-
> erty for hire in interstate or foreign commerce

only under such authority, and reciprocal
agreement is in effect between Texas and the
state of the domicile of such carrier, is
such carrier required to have a permit or
certificate issued by the Railroad Commis-
sion of Texas for authority to operate its
trucks on the highways in Texas?"

H. B. 298, Chapter 257, Acts of the 50th Leg-
islature, Regular Session, 1947, by its express wording
deals with the exemption from payment by a foreign mo-
tor carrier of the fees mentioned and required in Sec-
tions 5a(g) and (h), 7, 17(a), and 18 of Article 911b,
V.C.S. Nothing is contained in said Act amending, or
purporting to amend, Article 911b, supra, as to the re-
quirements of or necessity for a certificate of conven-
ience and necessity or permit. On the contrary, the
Act expressly provides that the exemption from payment
of plate and special tax fees shall not apply to the
payment of filing fees for applications for certifi-
cates or permits to operate in this State.

It has previously been decided that a motor
carrier which has been granted authority by the Inter-
state Commerce Commission to transport goods, wares,
and merchandise in interstate or foreign commerce by
motor vehicle must, prior to commencing operation in
this State pursuant to said interstate authority, ob-
tain from the Railroad Commission of Texas authority
to use our highways in such interstate operation, and
to comply with the insurance requirements and safety
regulations imposed by the Railroad Commission under
Article 911b, supra. Ex Parte Truelock, 140 S. W. (2d)
167 (Tex. Crim. App. 1940), and authorities therein
cited.

Nothing is contained in H. B. 298 which in
any manner changes this rule. The foreign motor car-
rier, regardless of the existence of a reciprocal
agreement between Texas and the state of its domicile,
is still required to obtain from the Railroad Commis-
sion of Texas a certificate or permit authorizing the
use of our State highways in interstate or foreign
commerce.

Your second question is therefore answered in
the affirmative.

"3. If a foreign motor carrier has author-
ity from the Interstate Commerce Commission to

transport property for hire between points
in Texas and points in other states and a
reciprocity agreement between Texas and the
state of the domicile of such foreign car-
rier is in effect, is such carrier required
to have a permit or certificate issued by
the Railroad Commission of Texas for author-
ity to operate its trucks on the highways of
Texas?"

Our discussion under Question No. 2 is equal-
ly applicable to Question No. 3. The answer is the same
in each instance.

Your third question is therefore answered in
the affirmative.

"4. If a foreign motor carrier has a
certificate or permit from the Railroad Com-
mission of Texas and there is a reciprocal
agreement in effect between Texas and the
state of the domicile of such foreign motor
carrier, does the vehicle of such foreign
motor carrier have to be registered (by
equipment report or otherwise) with the
Railroad Commission of Texas as being op-
erated on a reciprocal basis."

Under the rules and regulations of the Commis-
sion, as well as the general requirements of Article
911b, supra, a motor carrier is required to register
with the Commission as a part of the application for a
certificate or permit a written list and description of
the motor vehicles to be operated by the carrier under
said certificate or permit. The reason for such re-
quirement is obvious, because otherwise it would not be
possible for the Commission to determine whether the
motor vehicles to be used by the carrier meet the re-
quirements of the law and the rules and regulations of
the Commission as to safety requirements, and further,
whether the highways of this State would withstand the
added traffic burden proposed to be placed thereon.

Nothing is contained in H. B. 298, supra,
which in any manner attempts to dispense with these re-
quirements. These are all matters within the police
power of the State, and our previous discussion under
Question No. 2 is equally applicable here. See Ex Parte
Truelock, supra.

Your fourth question is therefore answered in the affirmative.

"5.  Where there is a reciprocity agreement between Texas and the state of domicile of a foreign carrier, is it necessary that the trucks of such foreign motor carrier operated in Texas have an identification card issued by the Railroad Commission displayed on such motor vehicles?"

Article 1690b, V.P.C., which is the penal portion of the Texas Motor Carrier Law, provides, in part, as follows:

"(e)  The Commission shall prescribe an identification card which must be displayed within the cab of each motor vehicle, setting out the certificate or permit number and the route or territory over which the vehicle is authorized to operate, giving the name and address of the owner of said certificate or permit.  It shall be unlawful for the owner of said certificate or permit, his agent, servant or employee, or any other person to use or display said identification card after said certificate or permit has been cancelled or disposed of.  The identification card provided for herein may be in such form and contain such information as required by the Railroad Commission."  (Emphasis ours)

House Bill 298, supra, in no way amends or modifies the requirements of the above quoted portion of Article 1690b, supra.

Your fifth question is therefore answered in the affirmative.

### SUMMARY

(1)  Reciprocity under H. B. 298, Chapter 257, Acts of 50th Legislature, Regular Session, 1947 (Section 18a of Article 911b, V.C.S.), is dependent upon the state of legal residence or domicile of the foreign motor carrier rather than the state of registration of the motor carriers' vehicles.

(2)  A foreign motor carrier coming within the provisions of Section 18a, supra, is not relieved of the requirement of obtaining a certificate or permit from the Railroad Commission authorizing the use of Texas highways in interstate or foreign commerce.

(3)  A foreign motor carrier coming within the provisions of Section 18a, supra, is still required to register with the Commission all motor vehicles operated by it in Texas by filing an equipment report with the Commission fully describing said motor vehicles.

(4)  Section 18a, supra, in no way amends or modifies the requirements of Article 1690b, V.P.C., requiring identification cards to be displayed on all motor vehicles operated under the jurisdiction of the Railroad Commission.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Charles D. Mathews*

Charles D. Mathews
Assistant

CDM:jt

APPROVED:

*Fagan Dickson*

FIRST ASSISTANT
ATTORNEY GENERAL